**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| LAWRENCE F. BECKER, III, Administrator of the ESTATE of LEE M. FLANNERY, <br><br> Plaintiff, <br><br> v. <br><br> CARBON COUNTY, et al., <br><br> Defendants. | CIVIL ACTION NO. 3:15-CV-929 <br><br> (JUDGE CAPUTO) |

**MEMORANDUM**

Presently before me are Defendant Carbon County, Frank Shubeck, Jane Doe # 1, Roberta Metz, Eric Flexer, Shirley Kirchdoerfer, Emily Moyer, Correctional Officer ("C.O.") Betchel, Christian Castro, Lawrence Moyer, George Hunsicker, and Jacqueline Shubeck's (collectively "Carbon County Defendants" where appropriate) Partial Motion to Dismiss (Doc. 7) and Defendant Cheryl Ayres[1] ("Ayres") Motion to Dismiss (Doc. 15) Plaintiff's Complaint, as amended.[2] (Doc. 1) Plaintiff, as administrator of the estate of the decedent, Lee M. Flannery ("Mr. Flannery"), brings this action pursuant to 42 U.S.C. § 1983 and Pennsylvania law. (Doc.1) Plaintiff alleges that while the decedent was incarcerated at

---

[1] Defendant Cheryl Ayres was purportedly not a county employee, but rather, an independent contractor and not covered by Carbon County's insurance. Therefore, she is not included among those collectively deemed "Carbon County Defendants." (*See* Doc. 8, 2 n. 1.)

[2] By order dated October 8, 2015, Plaintiff's complaint was amended by stipulation. (Doc. 19) The amendment resulted in the removal of the following claims against Defendant Ayres: deliberate indifference to serious medical needs under the Eighth and Fourteenth Amendment pursuant to 42 U.S.C. § 1983 in Count I; cruel and unusual punishment under the Fourteenth Amendment pursuant to 42 U.S.C. § 1983 in Count II; and, any and all claims for punitive damages. (Doc. 19) Therefore, Defendant Ayres withdrew her Motion to Dismiss with regard to those claims. (*Id.*) The parties agreed that the only pending motion filed by Ayres addresses Plaintiff's claim against Ayres for wrongful death under 42 Pa. C.S.A. § 8301.

Carbon County Correctional Facility, the defendants violated the decedent's Eighth and Fourteenth Amendment rights and did so in a manner demonstrating a reckless and wanton disregard for the rights of the decedent. (Counts I and II) Plaintiff also alleges that the defendants acted in a negligent manner resulting in the death of Mr. Flannery (Count III), and that all defendants are liable under Pennsylvania law survival (Count IV) and wrongful death (Count V) claims pursuant to the Pennsylvania Survival Act, 42 Pa. C.S.A. § 8301 *et. seq*. Plaintiff seeks both compensatory and punitive damages. The Carbon County Defendants seek dismissal of Plaintiff's Pennsylvania state law negligence and wrongful death claims against them. Ayres also seeks dismissal of Plaintiff's Section 1983 wrongful death claim against her. The parties have agreed that certain claims should be dismissed as discussed below and therefore, I will grant Defendants' respective motions in part. However, I will deny, in part, the Carbon County Defendants' partial motion for summary judgment because Plaintiff's wrongful death claims cannot be said to be foreclosed as a matter of law.

## I. Background

### A.   Factual and Procedural Background

The following factual background is taken from the Complaint. (Doc. 1.) The Complaint states an extensive factual background, but for the limited purpose of the current memorandum, I will only set forth those facts relevant to the current pending motions.

On May 14, 2013, Lee M. Flannery was a passenger in a vehicle subjected to a traffic stop. (*Complaint*, Doc. 1 "*Compl.*", ¶ 24.) At the time of the stop, there was an active warrant for Mr. Flannery stemming from a prior conviction. (*Compl.*, ¶ 25.) The Pennsylvania State Police ("PSP") took Mr. Flannery into custody and transported him to the PSP barracks at Fern Ridge. (*Id.*) On May 15, 2013, a search warrant was executed at the home where Mr. Flannery was staying and, as a result, Mr. Flannrey was charged with

possession with intent to deliver heroin, possession of heroin, and possession of drug paraphernalia. (*Id.* at ¶¶ 26-28.) Mr. Flannery was then transported from Monroe County Prison to Carbon County Correctional Facility ("CCCF"). (*Id.* at ¶ 29.)

At the time Mr. Flannery was booked at CCCF, CCCF was aware of the drug charges filed against him. (*Id.* at ¶ 30.) From the time Mr. Flannery was lodged at CCCF, the prison officials were aware that Mr. Flannery suffered from opiate addiction. (*Id.* at ¶ 35.)  Mr. Flannery was withdrawing from heroin at the time he was booked and was "dope sick." (*Id.* at ¶ 30. ) At approximately 8:15 p.m on May 15, 2013, Mr. Flannery was screened and assessed by Sergeant Ryan Long who noted that Mr. Flannery had admitted drug use and that Mr. Flannery was "crying" and "rambling." (*Id.* at ¶¶ 32-34.) Long deemed Mr. Flannery a suicide risk and he was placed on suicide watch. (*Id.* at ¶ 34; ¶ 81.) Mr. Flannery was placed in a cell at "booking"; "booking" consists of a limited amount of jail cells wherein inmates can be easily observed. (*Id.* at ¶ 80.) While on suicide watch, Mr. Flannery was apparently observed by officers every fifteen (15) minutes. (*Id.* at ¶ 81.) Immediately upon incarceration,  Mr. Flannery began vomiting.(*Id.* at ¶ 35.)

On May 16, 2013, Mr. Flannery was seen by a nurse, Jane Doe # 1, who noted that she was "made aware by booking [correctional officer] that inmate Flannery had vomited several times," and wrote that Mr. Flannery stated he was not honest during his initial medical exam, that he was "withdrawing from Percocet", and noted that an "opiate withdrawal program had begun." (*Id.* at ¶¶ 60-61.) However, no records indicate exactly when the protocol was provided to Mr. Flannery. (*Id.* at ¶ 38.)  Jane Doe # 1 also recorded that Mr. Flannery was given "Elimite Lotion" for scabies per a doctor's orders but no CCCF records document that Mr. Flannery was seen by a doctor at any time.  (*Id.* at ¶ 62.)  The May 16, 2013 records also indicate that Mr. Flannery was "nervous", "rambling", and had tachycardia which demonstrated that he was experiencing drug withdrawal symptoms. (*Id.*

at ¶ 37.) On the morning of May 17, 2013, Mr. Flannery was seen by Cheryl Ayres, a physicians assistant, and he disclosed his use of Percocet to her. (*Id.* at ¶¶ 56-57.)

At the time Mr. Flannery was incarcerated at CCCF, he was in good physical health other than suffering from heroin and/or opiate addiction and scabies. (*Id.* at ¶ 51.) However, while at CCCF, Mr. Flannery became symptomatic of heroin withdrawal with the following symptoms among others: profuse vomiting, tremors, chills, shakes, weakness, lethargy, freezing sensation, dizziness, difficulty breathing, and loss of appetite. (*Id.* at ¶ 55.) It was reported to the coroner by correctional officers and medical personnel that, while incarcerated, Mr Flannery was vomiting at least twice per hour and he could not tolerate food or liquids, was ill to the point of losing consciousness and was unable to walk without aid. (*Id.* at ¶ 49; ¶ 53.) Mr. Flannery informed correctional officers that he was ill and the symptoms he was experiencing were listed in their incident reports. (*Id.* at ¶ 54.)

Mr. Flannery's physical condition deteriorated between May 16, 2013 through May 19, 2013 as the effects of fluid loss and lack of nutrition became acute. (*Id.* at ¶¶ 69-70.) However, the CCCF records do not indicate that Mr. Flannery was ever seen by a doctor and did not see any medical personnel between May 17, 2013 and May 19, 2013. (*Id.* at ¶ 54; ¶ 122.) Mr. Flannery was pronounced dead on May 19, 2013 at 6:45 am. (*Id.* at ¶ 120.) He was 26 years old. (*Id.* at ¶ 148.)

Lawrence F. Becker, III, in his capacity as administrator of the estate of Lee M. Flannery, commenced this action by filing a complaint on May 12, 2015. (Doc. 1) The Complaint alleges that the Defendants were aware of, and were deliberately indifferent to, Mr. Flannery's medical condition between May 15, 2013 and May 19, 2013 in violation of his Eighth and Fourteenth Amendment Rights (Counts I and II), causing Mr. Flannery to suffer hours of unnecessary and excruciating suffering and agony, worsened his condition, and ultimately caused his death. (*Id.* at ¶¶ 136-143; ¶ 131; ¶ 134.) Plaintiff alleges that the

Defendants' conduct was outrageous, wanton, and malicious and in reckless disregard of Mr. Flannery's rights. (*Id.* at ¶ 150.) The Complaint also alleges Pennsylvania state law claims of negligence (Count III); survival pursuant to 20 Pa. C.S.A. § 3371 and 42 Pa. C.S.A. § 8302 (Count IV); and wrongful death pursuant to 42 Pa. C.S.A. § 8301 (Count V).

On June 17, 2015, the Carbon County Defendants filed a Partial Motion to Dismiss for failure to state a claim (Doc. 7) and a brief in support (Doc. 8). Plaintiff filed a brief in opposition on July 15, 2015. (Doc. 11) On September 15, 2015, Ayres filed a Motion to Dismiss for failure to state a claim (Doc. 15) and a brief in support (Doc. 16). A stipulation to amend the Plaintiff's Complaint was filed on October 7, 2015.  (Doc. 18) The Complaint was amended by order dated October 8, 2015. (Doc. 19) Plaintiff did not file a brief in opposition to Ayres's motion but intimated that he would not file an additional brief and would rely on the argument advanced in his brief filed in opposition to the Carbon County Defendants' motion to dismiss.[3] Therefore, the motions to dismiss are ripe for disposition.

B.   **Legal Standards**

The   Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, for failure to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6).  When considering a Rule 12(b)(6) motion, the Court's role is limited to determining if a plaintiff is entitled to offer evidence in support of their claims. *See Semerenko v. Cendant Corp.*, 223 F.3d 165, 173 (3d Cir. 2000).  The Court does not

---

[3] Plaintiff initially requested an extension of time to file a brief in opposition to Defendant Ayres's motion to dismiss. (Doc. 17) In the motion, Plaintiff signaled the filing of an amendment to the complaint which would resolve claims filed against Defendant Ayres and also stated that "The viability of the wrongful death claim is presently before the court, has been briefed by the plaintiff, and as such, [Plaintiff] is not amenable to dismissing that claim." (Doc. 17, ¶ 7.) Notwithstanding, as discussed *infra* at Section II (B), because the claims brought pursuant to Section 1983 against Ayres have been removed, Plaintiff cannot maintain a wrongful death claim premised on Section 1983 liability against Ayres.

5

consider whether a plaintiff will ultimately prevail. *See id*. A defendant bears the burden of establishing that a plaintiff's complaint fails to state a claim. *See Gould Elecs. v. United States*, 220 F.3d 169, 178 (3d Cir. 2000).

"A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The statement required by Rule 8(a)(2) must "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93, 127 S. Ct. 2197, 167 L. Ed. 2d 1081 (2007) (per curiam) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). Detailed factual allegations are not required. *Twombly*, 550 U.S. at 555, 127 S. Ct. 1955. However, mere conclusory statements will not do; "a complaint must do more than allege the plaintiff's entitlement to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). Instead, a complaint must "show" this entitlement by alleging sufficient facts. *Id*. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1950, 173 L. Ed. 2d 868 (2009). As such, "[t]he touchstone of the pleading standard is plausibility." *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012).

The inquiry at the motion to dismiss stage is "normally broken into three parts: (1) identifying the elements of the claim, (2) reviewing the complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged." *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011).

Dismissal is appropriate only if, accepting as true all the facts alleged in the complaint, a plaintiff has not pleaded "enough facts to state a claim to relief that is plausible on its face," *Twombly*, 550 U.S. at 570, 127 S. Ct. 1955, meaning enough factual allegations "'to raise a reasonable expectation that discovery will reveal evidence of'" each necessary element. *Phillips v. County of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 556, 127 S. Ct. 1955). "The plausibility standard is not akin

to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678, 129 S. Ct. 1937. "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679, 129 S. Ct. 1937.

In deciding a motion to dismiss, the Court should consider the complaint, exhibits attached to the complaint, and matters of public record. *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) (citing *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993)). The Court may also consider "undisputedly authentic" documents when the plaintiff's claims are based on the documents and the defendant has attached copies of the documents to the motion to dismiss. *Pension Benefit Guar.*, 998 F.2d at 1196. The Court need not assume the plaintiff can prove facts that were not alleged in the complaint, *see City of Pittsburgh v. W. Penn Power Co.*, 147 F.3d 256, 263 & n.13 (3d Cir. 1998), or credit a complaint's "'bald assertions'" or "'legal conclusions.'" *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1429–30 (3d Cir. 1997)).

## II. Discussion

Pursuant to the stipulated amendment to the Complaint, the remaining pending claims are as follows: Count I, deliberate indifference to the decedent's serious medical needs under the Eighth and Fourteenth Amendments[4] against the Carbon County Defendants pursuant to Section 1983; Count II, cruel and unusual punishment of the

---

[4] Plaintiff's complaint alternatively alleges violations of Mr. Flannery's Eighth and Fourteenth Amendment rights against cruel and unusual punishment. (*Compl.* at ¶157 ) Plaintiff alleges that the applicable constitutional amendment is to be determined with regard to Mr. Flannery's inmate status while at CCCF. (*Id.*) Plaintiff asserts Mr. Flannery could be considered both a pretrial detainee at the time of his death, thereby, invoking Fourteenth Amendment protections; or, an inmate sentenced to incarceration due to the outstanding warrant purportedly based on a prior conviction, and therefore, invoking Eighth Amendment protections. (*Id.*) Although the status of Mr. Flannery's sentence for the alleged prior conviction is unclear, I need not decide the issue as a challenge to the viability of Plaintiff's Section 1983 claims against the Carbon County Defendants is not presently before me.

decedent under the Eighth and Fourteenth Amendments against the Carbon County Defendants pursuant to Section 1983; Count III, Negligence under Pennsylvania law against the Carbon County Defendants and Ayres; Count IV, a survival action against the Carbon County Defendants and Ayres; and Count V, a wrongful death against the Carbon County Defendants and Ayres.

### A.     Carbon County Defendants

#### 1.     Counts I and II

The Carbon County Defendants do not seek dismissal of Plaintiff's claims in Counts I and II against them at this time. Therefore, those claims will proceed.

#### 2.     Count III

The Carbon County Defendants seek dismissal of Plaintiff's claim for negligence under Pennsylvania law and assert immunity on the part of the County and the individual County Defendants pursuant to the Pennsylvania Political Subdivision Tort Claims Act, 42 Pa. C.S.A. § 8541 *et seq.*[5] (hereinafter "Tort Claims Act"). (Doc. 8, 7-9.) Plaintiff concedes that the negligence claims against the Carbon County Defendants are precluded under the

---

[5]

The Tort Claims Act provides, in relevant part, immunity for local agencies as follows:

> Except as otherwise provided in this subchapter, no local agency shall be liable for any damages on account of any injury to a person or property caused by any act of the local agency or an employee thereof or any other person.

42 Pa. C.S.A. § 8541. The Torts Claims Act also provides for immunity for individuals as follows:

> An employee of a local agency is liable for civil damages on account of any injury to a person or property caused by acts of the employee which are within the scope of his office or duties only to the same extent as his employing local agency and subject to the limitations imposed by this subchapter.

42 Pa. C. S. A. § 8545 (West). The Torts Claims Act provides for certain limitations on immunity, however, none are relevant to the current case.

Tort Claims Act. (Doc. 11, 5.) Therefore, the Carbon County Defendants' motion to dismiss will be granted and Count III will be dismissed with prejudice as to the Carbon County Defendants.

### 3. Count V

The Carbon County Defendants' partial motion for summary judgment requests dismissal of Plaintiff's wrongful death claims (Count V) based on their assertion that the neither the Supreme Court nor the Third Circuit has authorized a wrongful death cause of action predicated on a Section 1983 claim and they contend that civil rights violations cannot serve as the basis of a state law wrongful death action. (Doc. 8, 9-10.) The Carbon County Defendants further argue that the Plaintiff is looking for compensation for the violation of Lee Flannery's civil rights and do not have standing to litigate violations of a third party's rights. (*Id.* at 10.) Plaintiff argues that, although the Third Circuit has not weighed in on the matter, there is no Third Circuit precedent "barring a wrongful death action, either as a pendant [sic] state law claim or for constitutional violations under [Section] 1983 for wrongfully causing a death." (Doc. 11, 6.) Both parties agree that there have been several different approaches taken by other circuit courts with regard to the viability of a wrongful death claim premised on an alleged Section 1983 claim. They disagree, however, about how the disagreement and lack of guidance from the Supreme Court and Third Circuit impacts this case.

There is no dispute that Mr. Lee Flannery is deceased. Therefore, the wrongful death action is being pursued by Mr. Flannery's estate representative, on behalf of his parents, Michael and Sandra Flannery. (*Compl.* at ¶ 184.); *see also* 42 Pa. C.S.A. § 8301. The claims in the current action are brought pursuant to Pennsylvania's wrongful death and survival statutes. The

> Pennsylvania Wrongful Death and Survival Act, 42 Pa.C.S. §§ 8301, 8302, was enacted to allow the survival of viable causes of action for bodily injury to a deceased, beyond the life of a victim. The Wrongful Death and Survival Act did not create a new theory of liability but merely allowed a tort claim of the decedent to be prosecuted. As a result, a plaintiff must state all the elements of a valid tort in order to maintain a claim under those statutes and such theory is subject to defenses.

9

*Ferencz v. Medlock*, 905 F. Supp. 2d 656, 674 (W.D. Pa. 2012) (citations omitted). Under Pennsylvania law, as in this case, there are both survival and wrongful death actions. While a survival action

> is brought by the administrator of the decedent's estate in order to recover the loss to the estate of the decedent resulting from the tort [and] [t]he measure of damages awarded. . . include the decedent's pain and suffering, the loss of gross earning power from the date of injury until death, and the loss of his earning power-less personal maintenance expenses, from the time of death through his estimated working life span.

*Kiser v. Schulte,* 538 Pa. 219, 226-27, 648 A.2d 1, 4 (1994) (citations omitted). A wrongful death action, on the other hand, is

> one which is created for the benefit of and is held by statutorily specified survivors and is intended to compensate them for the pecuniary loss suffered because of the decedent's death. Put another way, the action remedies the loss sustained by the survivors who are deprived of the decedent's earnings, companionship, etc.

*Miller v. Philadelphia Geriatric Ctr.*, 463 F.3d 266, 271 (3d Cir. 2006). As stated, the defendants do not seek dismissal of the survival action in Count IV.

Turning to the parties' arguments on the wrongful death claim, the civil rights claims by Plaintiff against the Carbon County Defendants are asserted pursuant to Section 1983. Section 1983 provides a remedy for violations of rights created by the Constitution or federal law. 42 U.S.C. § 1983; *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979). In order to state a claim under Section 1983, a plaintiff must show that the defendants, acting under color of state law, deprived him or her of a right secured by the Constitution or the laws of the United States. *Paratt v. Taylor*, 451 U.S. 527, 535 (1981), *overruled on other grounds*, *Daniels v. Williams*, 474 U.S. 327 (1986). The potential viability of a wrongful death claim requires the Plaintiff to state a valid tort claim, however, the Carbon County Defendants do not challenge Plaintiff's underlying Section 1983 claims at this time.

It is clear that a cause of action for violation of civil rights does not die with the victim of the alleged constitutional deprivation. *Moyer v. Berks Heim Nursing Home*, No. 13-CV-4497, 2014 WL 1096043, at *2 (E.D. Pa. Mar. 20, 2014) (quoting *Baffa v. Black,* 481 F.Supp. 1083, 1085–86 (E.D.Pa.1979)) (citations omitted). However, because Section 1983

is silent on the method of "redress", courts must turn to 42 U.S.C.A. § 1988(a), providing in relevant part:

> The jurisdiction in civil . . . matters conferred on the district courts by the provisions of titles 13, 24, and 70 of the Revised Statutes for the protection of all persons in the United States in their civil rights, and for their vindication, shall be exercised and enforced in conformity with the laws of the United States, so far as such laws are suitable to carry the same into effect; but in all cases where they are not adapted to the object, or are deficient in the provisions necessary to furnish suitable remedies. . ., the common law, as modified and changed by the constitution and statutes of the State wherein the court having jurisdiction of such civil or criminal cause is held, so far as the same is not inconsistent with the Constitution and laws of the United States, shall be extended to and govern the said courts in the trial and disposition of the cause. . .

Although there is agreement that federal law does not provide for the remedies to redress violations of Section 1983, the circuit courts of appeal that have addressed this issue are split as to whether the respective situs state's wrongful death law measure of damages can be applied consistently with federal law to provide suitable remedies for the violation of federal civil rights.[6] *Moyer,* 2014 WL 1096043, at *3; s*ee also Frontier Ins. Co. v. Blaty*, 454 F. 3d 590, 603 (6th Cir. 2006); 42 U.S.C. § 1988.

In *Moyer,* the court addressed the defendants' motion to dismiss a complaint's

---

[6]
The *Moyer* Court summarized the circuit split as follows:

> [f]inding that estates lack standing, several circuits prohibit § 1983 wrongful death claims preferring instead a federal common law remedy. *See Andrews v. Neer,* 253 F.3d 1052 (8th Cir.2001); *Berry [v. City of Muskogee],* 900 F.2d [1489,] 1506–7 [(10th Cir. 1990); *Jaco v. Bloechle,* 739 F.2d 239, 243 (6th Cir.1984)). Other courts allow § 1983 wrongful death claims to go forward. *See Carringer v. Rodgers,* 331 F.3d 844, 850 (11th Cir.2003); *Spence v. Staras,* 507 F.2d 554, 558 (7th Cir.1974); *Brazier [v. Cherry,]* 293 F.2d [401,] 409 (5th Cir. 1961). The Third Circuit has not addressed the issue and there is disagreement among the judges of [Eastern] district. *Compare Massey v. Fair Acres Geriatric Center,* 881 F.Supp.2d 663 (E.D.Pa.2012), *with Baffa,* 481 F.Supp. at 1086.

*Id.* at *3.

Section 1983 claims where the defendants objected to the plaintiffs' assertion of a wrongful death claim based on the alleged violation of the decedent's federal rights. 2014 WL 1096043 at * 2-3. The complaint set forth the claims brought by the administrator of the decedent's estate in the same manner as Plaintiff in the current case set forth his claims. *Id.*[7] The court ultimately decided that the Section 1983 wrongful death claim would proceed without specifically delineating the extent of the appropriate damages measure. *Id.* at *4

A closer review of the cases cited by *Moyer* is instructive.

The Fifth Circuit case of *Brazier v. Cherry,* 293 F. 2d 401 (5th Cir. 1961) *cert. denied*, 961 U.S. 921 (Nov. 20, 1991), analyzes claims for Section 1983 wrongful death pursuant to Georgia's survival and wrongful death provisions. In *Brazier*, an action was filed by a widow, both as administrator of her late husband's estate and individually, alleging violations of the decedent's civil rights. *Id.* at 402. The court stated that Section 1988 provides for application of a state's law if the federal law leaves gaps and "state law is to be used . . . to overcome these deficiencies" and the test to apply is: "what is needed in the particular case under scrutiny to make the civil rights statutes fully effective? The answer to that inquiry is then matched against (a) federal law if is found wanting, the court must look to (b) state law currently in effect." *Id.* at 409. Finding federal law deficient, the court stated the following:

> Since Georgia now provides both for survival of the claim which the decedent had for damages sustained during his lifetime as well as a right of recovery

---

[7] The court also noted that the plaintiff stated state law claims for wrongful death as a separate count, as in the current case, and because "counts I and II allege the [Section] 1983 wrongful death and survival claims, I infer that counts IV [wrongful death] and V [survival] deal solely with" the plaintiff's claim for medical malpractice under the third count. *Moyer,* 2014 WL 1096043, at * 5 n. 13. In the current case, Plaintiff's complaint alleges the decedent's damages, *i.e.,* pain and suffering, loss and enjoyment of decedent's life,  future economic damages, and funeral and related expenses, in Count I, but does not state the alleged losses accruing to the decedent's parents based on his death. (*Compl.* at ¶ 151.) Despite not having the benefit of review of the complaint filed in *Moyer*,  I do not agree that Plaintiff's claim in Count V deals solely with the negligence claim in Count III and therefore, treat the claim separately.

> to his surviving widow and others for homicide, we need not differentiate between the two types of actions. To make the policy of the Civil Rights Statutes fully effectual, regard has to be taken of both classes of victims. Section 1988 declares that this need may be fulfilled if state law is available. Georgia has supplied the law.

*Id.* (citations in original). The court looked to Georgia law and the full remedies provided, because Section 1988 adopts the "whole 'common law as modified and changed by the constitution and statutes of the State." *Id.*[8] Therefore, if Georgia law provided a specific remedy, so to should the Fifth Circuit.

In *Spence v. Staras*, 507 F. 2d 554, 556 (7th Cir. 1974), the Seventh Circuit held that a mother could bring an action for wrongful death against an Illinois state owned hospital as administratrix of her son's estate but not on behalf of herself. Relying on the reasoning in *Brazier*, the court stated that "[i]n a federal civil rights action where the person who has been deprived of his rights has died, the action survives for the benefit of the estate if the applicable state law creates such a survival action." *Id.* at 557. The Illinois law provided for "the survival of an action to recover pecuniary losses incurred by the decedent's next of kin due to the decedent's death," but the law also provided that the action must be brought in a representative capacity. *Id.* The court therefore, dismissed the claims asserted on behalf of the mother but the representative action was permitted to proceed past a motion to dismiss, despite the court's noting that the plaintiff may have difficulty demonstrating the pecuniary loss necessary for recovery under the wrongful death statute. *Id.* at 587-88.

The following cases did not apply the situs state law.

In *Berry v. City of Muskogee*, 900 F. 2d 1489 (10th Cir. 1990), a widow brought an action on behalf of herself and her children and as the personal representative of her

---

[8] The Eleventh Circuit also applied Georgia law in *Carringer v. Rodgers*, 331 F. 3d 844 (11th Cir. 2003), where a mother filed suit against the city and chief of police when her son was shot and killed. The court reviewed whether the mother could bring an action pursuant to Section 1983 for the wrongful death of her son and answered in the affirmative. *Id.* at 847-48. The court cited to *Brazier* as a controlling precedential decision finding Georgia law acceptable to fill the "gap" left by federal law and providing a suitable remedy. *Id.* at 849.

husband's estate. *Id.* at 1492. The plaintiff sought damages for her husband's pain and suffering and expected loss of earnings, her grief and loss of consortium, and her children's grief and loss of consortium. *Id.* The court stated the question to be answered as:

> whether damages in a [Section] 1983 action in which death occurs are limited to those recoverable under the Oklahoma survival action alone, or to those recoverable by such a survival action and an Oklahoma wrongful death suit, or whether damages are determined by some federal standard either as a survival or wrongful death-type action not defined or limited by state law.

*Id.* at 1501. The court first determined that Oklahoma's survival act alone did not provide a sufficient Section 1983 remedy because damages were limited to those for property loss or the loss of the decedent's earnings from the time of injury to death. *Id.* at 1504. The court concluded that federal courts must fashion a federal remedy to be applied in Section 1983 death cases because "[a]pplication of state law, at least in some instances, will be inconsistent with the predominance of the federal interest." *Id.* at 1506. Favoring a federal common law approach, the court stated that sufficient damages for a Section 1983 death claim include punitive damages, pursuant to Supreme Court precedent, and compensatory damages that include "medical and burial expenses, pain and suffering before death, loss of earnings based upon the probable duration of the victim's life had the injury not occurred, the victim's loss of consortium, and other damages recognized in common law tort actions." *Id.* at 1507. Notably, the court specifically stated that "the state wrongful death actions are not foreclosed by this approach; they remain as pendent state claims." *Id.*

The Sixth Circuit reasoned that "the wrongful death of the decedent resulting from a tort, which gives rise to the cause of action for the benefit of his heirs, is not equivalent to decedent's personal [Section 1983] claim, and decedent's administratrix is therefore, without standing in the federal forum to commence an action, pursuant to [Sections] 1983 and 1988, under either the Ohio survivor or wrongful death statute." *Jaco v. Bloechle*, 739 F. 2d 239, 242-43 (6th Cir. 1984). The plaintiff filed an action based on alleged violations of the decedent's constitutional rights and sought compensation under Ohio's wrongful death statute averring that the action was "a survivor's action on behalf of the heirs of the decedent and the wrongful death action for benefit to the beneficially titled next of kin." *Id.*

14

at 240. The court reviewed both the Ohio survival and wrongful death statutes. *Id.* at 241-242. The survival recovery was deemed inadequate to serve the purposes of Section 1983, *i.e.,* compensation and "preventing official illegality", when the survival statute only provided for damages that the decedent suffered from the injury until death; especially when the death was instantaneous. *Id.* at 242. The court distinguished a wrongful death action from a survival action in that a "wrongful death action creates a new and separate claim or cause of action for the damages sustained by the decedent's estate as a result of his death." *Id.* Relying on the language of Section 1983 that a 1983 action is granted "to the party injured", the court held that the Ohio wrongful death law could not be substituted because

> the wrongful death of the decedent resulting from a tort which gives rise to the cause of action for the benefit of his heirs, is not equivalent to decedent's personal [Section] 1983 claims, and decedent's administratrix is therefore without standing in the federal forum to commence an action, pursuant to [Sections] 1983 and 1988, under either the Ohio survival or wrongful death statute.

reasoning that "to arbitrarily conclude that [heirs] injuries resulted from an infringement of their civil rights would be sheer obfuscation of the issue." *Id. at* 242-43. Ohio law was deemed inadequate to protect the rights of the decedent and therefore, the court would not apply the damages provisions of survival law to the Section 1983 claim, but the court allowed the claim for violation of the decedent's civil rights to proceed in an administrative capacity without reference to the measure of damages to be used. *Id.* at 245. Of particular note is the court's statement that the district court failed to consider the claim of the heirs as "a cause of action separate from the civil rights claim and [that] should have been treated as a state claim subject to the trial court's pendent jurisdiction." *Id.* at 243 n. 5.

The Sixth Circuit again reviewed the issue in *Frontier*, 454 F. 3d 590. The plaintiff brought an appeal challenging the denial of damages for the infant decedent's alleged loss and enjoyment of life. *Id.* at 595. The Michigan statute at issue did not specifically provide for damages for loss of enjoyment of life, but did provide for reasonable medical and burial expenses, conscious pain and suffering, and damages for "loss of financial support and the loss of the society and companionship of the deceased." *Id.* at 599. Finding that the

application of the Michigan statute was not inconsistent with Section 1983's purpose, the court affirmed the denial of damages not provided for by the state statute. *Id* at 603. Drawing a distinction, the court stated that in *Jaco*, "the state remedies provided no recovery at all" and that "section 1988's instruction to set aside a state remedy should only be used where it provides no meaningful deterrence, . . . [and] should not disturb a state remedy unless it is clear that such remedy is wholly inconsistent with the Constitution and goals of section 1983." *Id.* The court further stated,

> Given Congress's choice to incorporate state law damage provisions for section 1983 cases–and to only provide additional damages when state remedies are entirely insufficient with the policies of compensation and deterrence–we do not have the discretion to hold that damages beyond those made available by the state should be allowed by simply deciding that such a remedy would be preferable.

*Id.* The court also noted its rejection of the Tenth Circuit's reasoning that "variance in state law remedies may make all state remedies inadequate under Section 1988" because Section 1988 clearly provides "in the absence of suitable federal remedies, we must apply "the common law, as modified and changed by the . . . State." *Id.* at 602 n. 3.

The Eighth Circuit affirmed that the daughter of a deceased involuntary patient in a Missouri state hospital could bring a claim for the alleged violation of her father's civil rights but could not maintain a claim for her own alleged injuries. *Andrews v. Neer*, 253 F. 3d 1052, 1057 (8th Cir. 2001). Looking to Missouri's wrongful death statute, the court adopted the approach of the Tenth Circuit in *Berry* and stated "that, by allowing the measure of damages in [the plaintiff's] suit to be entirely defined by the language of the Missouri wrongful death statute, [the court] would impermissibly broaden the types of injuries for which Congress intended recovery to be available under [Section] 1983's authorization of liability 'to the party injured.'" *Id.* at 1064. The court, however, specifically stated that the plaintiff had not pursued a supplemental state law wrongful death claim and that the plaintiff "cannot shoehorn recovery available to her under such separate claims into the recovery she may receive under [Section] 1983 for her father's injuries." *Id.*

Turning the current case, the parties' argument centers on whether a Section 1983

16

wrongful death claim is foreclosed. The Carbon County Defendants cite to *O'Malley v. Brierley*, 477 F.2d 785 (3d Cir. 1973), for the proposition that a litigant cannot sue for the deprivation of another's civil rights. In *O'Malley*, the Third Circuit addressed Section 1983 claims brought by inmates and their priests for alleged First Amendment violations, with both the priests and inmates suing in their own right. *Id.* at 788. Summary judgment was granted on the clergymen's claims that their First Amendment religious freedom and free speech rights were violated when their prison visitation privileges were withdrawn. *Id*. at 793. The court determined the rights they asserted did not exist. *Id.* The priests were not entitled to practice their religion within the walls of the prison, however, the court stated that the inmates may have a cognizable claim based on curtailment of their religious rights when denied visitation by the priests. *Id.* at 795-96. But, the non-existence of the priests' asserted rights prevented their participation in an action that stated a cognizable claim on behalf of the inmates they were prevented from visiting who were representing their own interests in the suit. *Id.* at 795. Plaintiff urges that *O'Malley* does not support the Carbon County Defendants' argument because *O'Malley* did not address wrongful death claims and no Third Circuit case exists employing *O'Malley* to dismiss wrongful death claims in Section 1983 actions. (Doc. 11, 8.) Plaintiff asserts Pennsylvania's wrongful death claims are "not offensive to [Section] 1983 and that the remedial effect of [Section] 1988 would allow such a remedy." (Doc. 11, 8.)

Both parties cite to *Moyer, supra,* in support of their positions. The Carbon County Defendants argue that *Moyer* stands for the proposition that "a [Section] 1983 claim conflicts with O'Malley because the plaintiff is looking for compensation for the violation of Lee Flannery's civil rights." (Doc. 8, 10 (citing *Moyer,* 2014 WL 1096043 at *3.*)) Plaintiff counters that the Carbon County Defendants' reliance on *Moyer* is misplaced because the court ultimately denied the defendant's motion to dismiss in that case. (Doc. 11, 8.)

Despite the Carbon County Defendants assertion, the *Moyer* court does not foreclose the Section 1983 wrongful death claims and did not employ *O'Malley* to preclude wrongful death claims. Immediately after stating the *O'Malley* rule, the *Moyer* court goes on to state:

> Insofar as the underlying tort in a wrongful death action is the tort causing death, a § 1983 wrongful death claim would appear to conflict with *O'Malley* because plaintiffs would be allowed to recover damages based on the violation of [the decedent]'s civil rights. On the other hand, some courts have reasoned that the decedent's survivors are also victims of the civil rights infringement; therefore, a wrongful death action must be allowed to give the civil rights statute full effect.

*Id.* at * 3. The court then stated that the damages ultimately recoverable to the plaintiffs may be those covered by the survival claims, and due to a prohibition on duplicative awards under Pennsylvania law[9], "there may be no need to predict what rule the Third Circuit will adopt if plaintiffs' damages are recoverable under both theories." *Id.* at *4.

I do not agree that *O'Malley* precludes wrongful death claims in this action. The *O'Malley* court specifically referenced the fact that the inmates in that case were able to, and were in fact, asserting their own claims. 477 F.2d at 788. Such is not the case currently. Additionally, although the various courts have come to different conclusions regarding the appropriateness of the application of various state laws to Section 1983 death actions, I am not convinced that application of the Pennsylvania state law is inconsistent with the remedial provisions of Section 1988. Also, several of the courts specifically stated that pendent state law claims were separate and apart from the Section 1983 claims. Upon review of the Plaintiff's complaint, it seeks to invoke jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343, and supplemental jurisdiction of state law claims pursuant to 28 U.S.C. § 1367(a). (*Compl.* at ¶ 3.) At this early stage of the proceedings, without guidance from the Third Circuit, I cannot say, as a matter of law, that Plaintiff is not entitled to pursue a claim under Pennsylvania's wrongful death statute. Also, as stated, I am not convinced that

---

[9] *See* 42 Pa. C. S. A. § 8301 (West) ("(a) General rule.--An action may be brought, under procedures prescribed by general rules, to recover damages for the death of an individual caused by the wrongful act or neglect or unlawful violence or negligence of another if no recovery for the same damages claimed in the wrongful death action was obtained by the injured individual during his lifetime and any prior actions for the same injuries are consolidated with the wrongful death claim so as to avoid a duplicate recovery.")

*O'Malley* forecloses the reliance on Pennsylvania's wrongful death act into a measure of damages for the violation of a decedent's rights. *See DeJesus v. City of Lancaster,* No. 14-CV-3477, 2015 WL 1230319, at *3 (E.D. Pa. Mar. 17, 2015) ("I shall take the same approach as the Honorable Lawrence F. Stengel did in *Moyer* and I will allow these claims to proceed. After discovery, the parties may address the propriety of these claims."). It is clear that Pennsylvania law provides for certain damages under the survival and wrongful death acts if entitlement to those damages is demonstrated and that Section 1983 does not provide for a specific remedy. I am not persuaded that application of the wrongful death damages is inconsistent with Sections 1983 and 1988. Therefore, the Carbon County Defendants motion to dismiss Plaintiff's claims pursuant to Pennsylvania's wrongful death statute will be denied.

### B.     Defendant Ayres

The stipulation to amend Plaintiff's Complaint removed several of Plaintiff's claims against t Ayres. As a result, Ayres's motion to dismiss was largely mooted by the amendment. Ayres does not seek dismissal of Plaintiff's negligence claim against her. However, Ayres also moves to dismiss Count V of Plaintiff's Complaint asserting the same argument as Carbon County Defendants and Plaintiff did not stipulate to the dismissal of this claim.

As stated above, a wrongful death action is dependent on the Plaintiff's proper pleading of a tort committed against the decedent. Because the amendment disposed of the claims against Ayres pursuant to Section 1983, a claim for wrongful death predicated on Plaintiff's original Section 1983 claims against Ayres cannot survive. *See Hearst v. Mason*, No. 1:11-CV-304, 2014 WL 1203269, at *5 (W.D. Pa. Mar. 24, 2014) (quoting *Phillips ex rel. Phillips v. Monroe Cnty,* 311 F. 3d 369, 374 (5th Cir. 2002)) ("a plaintiff seeking to recover on a wrongful death claim under § 1983 must prove both the alleged constitutional deprivation required by § 1983 and the causal link between the defendant's unconstitutional acts or omissions and the death of the victim, as required by the state's

wrongful death statute"); *see also Ponzini v. Monroe Cty.*, No. 3:11-CV-00413, 2015 WL 5123720, at *14 (M.D. Pa. Aug. 31, 2015). Ayres's motion to dismiss Plaintiff's wrongful death claim based on Section 1983 will be granted.

Defendant Ayres has not moved to dismiss a wrongful death action predicated on her alleged negligence. (*See* Doc. 15; Doc. 16, 5-6) Plaintiff's complaint contains broad language under Count V[10] that the wrongful death claim is brought against all defendants based upon all Defendants' acts or omissions. (*Compl.* at ¶ 186.) Therefore, this claim will proceed.

### III. Conclusion

For the above stated reasons, the Carbon County Defendants' partial motion to dismiss will be granted in part and denied in part and Defendant Ayres's motion to dismiss will be granted in part and denied in part as moot.

An appropriate order follows.

| | |
|---|---|
| April 8, 2016<br>Date | /s/ A. Richard Caputo<br>A. Richard Caputo<br>United States District Judge |

---

[10] The Complaint states:
> As a direct and proximate result of the Defendants aforesaid acts, the Plaintiff, Lawrence F. Becker, Esq., Administrator of the Estate of Lee M. Flannery, sets forth that the Defendants are liable to him for the following damages:
> - a. The funeral expenses for the Decedent;
> - b. Expenses and administration related to Decedent's injuries;
> - c. The Plaintiff's deprivation and injury as a result of the loss of pecuniary loss of support consortium, comfort, counsel, aid, association, care and services of the Decedent, and
> - d. Such other damages as are permissible under the wrongful death act.

(*Compl.* at ¶ 186.).